Filed 2/8/21  P. v. Anderson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DONALD EDWARD ANDERSON,<br><br>    Defendant and Appellant. | F076988<br><br>(Super. Ct. No. MCR055958)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea, Judge.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Tia M. Coronado and Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Donald Edward Anderson was convicted of various crimes for driving under the influence of drugs (DUI) and causing a collision with another vehicle.  He raises two questions on appeal.  One, did the prosecutor err in closing argument by shifting the

burden of proof to Anderson? Two, did the court err in imposing certain fines, fees, and assessments as part of the sentence without first holding an ability to pay hearing?

The People dispute the burden shifting claim but raise another issue. Did the court err by imposing a Vehicle Code fine under the statutory minimum? On this basis, they contend we should remand the matter for the trial court to impose the correct fine, at which time Anderson may raise a challenge to any other financial obligation. We agree with the People on all accounts.

## BACKGROUND

### Charges

The Madera County District Attorney charged Anderson with committing four crimes: DUI causing injury (Veh. Code,[1] § 23153, subd. (f); Count 1), hit-and-run causing injury (§ 20001, subd. (a); Count 2), failure to appear (Pen. Code, § 1320, subd. (b); Count 3), and driving with a suspended license (§ 14601.2, subd. (a); Count 4). The charges included the following special allegations: Causing injury to more than one person (§ 23558; Count 1), two prior DUI convictions (§ 23566, subd. (a); Count 1), two prior driving while license suspended convictions (§ 14601.2, subd. (a); Count 4), and three prior strike convictions (Pen. Code, §§ 667, subds. (b)-(i) & 1170.12 (c)-(g)).

### Trial Evidence

A car registered to Anderson veered across the highway into oncoming traffic. A two car collision resulted. Both cars came to a rest.

The man driving the second car was traveling with his wife and niece. He went around to the passenger side of the car to assist his wife. The man and his wife were injured but his niece was unharmed.

At trial, the man testified he "kept [his] eye" on Anderson's vehicle after the collision. He saw one person emerge from it and no one else around. Although he

---

[1] Undesignated statutory references are to the Vehicle Code.

2.

originally stated there were two occupants in Anderson's vehicle, by trial he no longer "believe[d] there was a second person."[2]

A tow truck driver promptly responded to the scene. On his way back to the tow yard he encountered an adult male walking in the middle of the road about one quarter to one half mile from the scene. He alerted local law enforcement about his discovery, waited for an officer to respond, spoke directly to the responding officer, and then departed.[3]

That law enforcement officer subsequently encountered Anderson a little further down the road, about one mile from the collision site. After conversing with Anderson and conducting various field sobriety tests, the officer believed Anderson was under the influence of drugs and unable to safely operate a vehicle. The officer also noted the driver's seat in Anderson's car was adjusted to accommodate Anderson's height.

A second law enforcement officer conducted a drug recognition examination on Anderson. The officer concluded Anderson was under the influence of a stimulant and a depressant. He also believed Anderson was unable to safely operate a vehicle. Twenty-three whole Xanax[4] pills and 25 pieces of Xanax were found on Anderson's person.

A blood test later confirmed the presence of Xanax and cocaine "metabolite" in Anderson's blood. !(RT 1515)! Xanax is a central nervous system depressant. !(RT 999, 1516)! Cocaine is a central nervous system stimulant. !(RT 1515)!

After charges were filed against Anderson, he was released from jail custody with the agreement he would attend his court hearings. A probation technician was assigned

---

[2] The man explained the discrepancy was due to mistaking a headrest in Anderson's car for a second occupant.

[3] The tow truck driver testified the man he encountered in the road had "dark" skin. But, according to the responding officer, the tow truck driver had actually described encountering a "white male" instead.

[4] Xanax is a "brand name" prescription medication.

to supervise the release.  A few days after his release, Anderson called the technician and said he needed to go to the hospital for "neurosurgery …."  The technician asked for but never received any proof.

The court judicially noticed the following facts:  1) Anderson failed to appear at his first court date after release from jail; and 2) he was not "returned to court" until about 77 days after the release.  The parties also stipulated Anderson's driver's license was suspended and that he knew it was suspended.

**Verdict and Sentence**

Anderson was convicted as charged.  He was sentenced to serve nine years in prison.  The sentence included a $390 base fine pursuant to section 23566, and several other financial obligations.

**DISCUSSION**

Anderson claims his counsel was constitutionally ineffective for failing to object to various comments made by the prosecutor during closing argument.  He also seeks remand for the opportunity to challenge various fines, fees, and assessments imposed as part of the sentence.

The People oppose the ineffective assistance claim but concede remand is appropriate with an important caveat.  They claim Anderson may only challenge punitive fines under Eighth Amendment jurisprudence, and non-punitive fines only under due process jurisprudence.  We agree with the People on each claim.

**I. Defense Counsel Was Not Constitutionally Ineffective**[5]

In closing argument, the prosecutor pointed out the fact Anderson's defense theory was not supported by evidence, even though Anderson could have presented supporting

---

[5] Anderson primarily presented this claim as one of prosecutorial error.  He concedes "[t]he record is clear that defense counsel did not object to the prosecutor's" argument and submits counsel's failure "constitutes ineffective assistance …."  Accordingly, we proceed directly to review the ineffective assistance claim.  (See *People v. Centeno* (2014) 60 Cal.4th 659, 674 (*Centeno*) [" ' "[a] defendant may not

evidence with relative ease.  Defense counsel did not object to the comments but did address them directly in her own closing argument.  Anderson now claims his counsel was constitutionally ineffective for not objecting.  We disagree.

**A. Additional Background**

The defense strategy in this case was clear:  Anderson was a passenger in his car, not the driver, and he missed court not out of a desire to avoid it, but due to surgery.  The prosecutor understood the strategy and argued Anderson was in fact the driver.  He added, "[I]f there was this phantom second person out there somewhere, you know, where is he?  You know, again, he wasn't seen at the scene by anybody.  When [officers] searched the area, they certainly didn't see anyone else in the area.  …  [H]e's certainly not here in court, and it would have been real easy for [Anderson] to subpoena that person and have him testify.  They're not here.  One has to wonder why."

While arguing the failure to appear charge, the prosecutor stated:

> "I would even go as far as to say that [Anderson] was lying about the fact that he had some type of surgery.  [¶]  And, you know, I don't throw that term around lightly.  You know, calling someone a liar is a big deal, but I can say it with some certainty, because how easy would it be to prove that?  You know, provide a doctor's note.  Provide some medical records saying you're going to have a surgery on that day or better yet, subpoena the doctor who supposedly gave you the surgery.  Real easy to do.  [Anderson] didn't do any of those things, and again, you have to wonder why."

He added, "[T]here's a presumption that if someone is gone from the court longer than 14 days, you can presume that they did so with the intent to evade the process of the

---

complain on appeal of prosecutorial [error] unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety." ' "].)

5.

court."[6]  He concluded, "[T]his charge shows a consciousness of guilt, I submit to you, because if he's innocent of this, … I submit to you most people would be banging down the doors of the courtroom to prove their innocence.  He didn't.  There's a consciousness of guilt …."

Defense counsel countered these arguments by stating, "[T]here's been a lot of discussion about the things I could have done.  I could have brought the driver.  I could have brought medical records.  As I stand before you, I have no burden.  I don't have to prove anything to any one of you.  [The prosecutor] represents the government in this matter.  It is his duty to prove to every one of you that every single element has been proven beyond a reasonable doubt."  Defense counsel added, "I don't need to prove to you that someone else was driving," "I don't have that burden.  [The prosecutor] cannot place that burden into my lap."

In rebuttal, the prosecutor acknowledged defense counsel was "absolutely right: The burden is on us.  They're under no obligation to produce any evidence.  But you have to ask yourself, if there was, in fact, this phantom other driver, where is he, and why didn't the defense do something to produce him here in court, because they would obviously know who that person was …."  Finally, the prosecutor reiterated, "And, again, they have no obligation to do anything.  The burden is totally on us, but they have all those cards that they actually had, and it would be a really easy thing to prove."

**B. Analysis**

The Sixth Amendment guarantees the " 'right to the effective assistance of counsel.' "  (*Strickland v. Washington* (1984) 466 U.S. 668, 685-686.)  " '[T]o establish a claim of ineffective assistance of counsel, [Anderson] bears the burden of demonstrating, first, that counsel's performance was deficient because it "fell below an objective

---

[6] The presumption is contained within Penal Code section 1320, subdivision (a). Evading the process of the court is an element of the crime.

standard of reasonableness [¶] ... under prevailing professional norms." [Citations.] Unless [he] establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.] If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." [Citations.] If [he] meets the burden of establishing that counsel's performance was deficient, he … must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ' " (*People v. Bell* (2019) 7 Cal.5th 70, 125.)

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*Centeno, supra,* 60 Cal.4th at p. 667.)

We find no deficient performance for two reasons. First, considering the prosecutor's argument in context, there is no reasonable probability " 'the jury understood or applied the complained-of comments in an improper or erroneous manner.' " (*Centeno, supra,* 60 Cal.4th at p. 667.) The "trial court properly instructed the jury that the arguments of counsel did not constitute evidence, and that the prosecution bore the burden of convincing each juror of defendant's guilt of each charge beyond a reasonable doubt, instructions we presume the jury followed." (*People v. Thomas* (2012) 54 Cal.4th 908, 940.)

7.

Defense counsel correctly reminded the jury the prosecutor bore the burden of proof with direct reference to the comments at issue—a point the prosecutor was compelled to concede. In any event, "[a] prosecutor is permitted … to comment on a defendant's failure to introduce material evidence or call logical witnesses." (*People v. Brown* (2003) 31 Cal.4th 518, 554.)

Second, defense counsel apparently chose to address the prosecutor's argument by argument to the jury rather than by objection to the court. Attempting to excoriate a prosecutor for misstating fundamental law is sound trial strategy because it may curry immeasurable favor with the jury whereas an objection instead may immediately blunt the error, leaving the jury none the wiser. The strategy was somewhat successful as the prosecutor was obliged to agree, in rebuttal, with defense counsel about the burden of proof.

Nonetheless, "we do not condone statements that appear to shift the burden of proof onto a defendant …." (*People v. Booker* (2011) 51 Cal.4th 141, 185.) Suggesting Anderson could subpoena the driver or other evidence to support the defense theory inappropriately, while acknowledging the prosecution bears the burden of proof, seemingly shifts the burden away from the prosecution.

The prosecutor also argued "most people would be banging down the doors of the courtroom to prove their innocence …." But this argument was made in the context of proving a specific intent to evade the process of the court. (Cf. *People v. Bradford* (1997) 15 Cal.4th 1229, 1340 ["A distinction clearly exists between the permissible comment that a defendant has not produced any evidence, and on the other hand an improper statement that a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence."].) With this context, the entire jury instructions, and the subsequent defense argument and later prosecution concession regarding the People's burden of proof, there is no reasonable probability the jury understood the argument in an improper manner. Moreover, defense counsel actively

condemned the prosecutor's borderline comments to the jury, albeit not by legal objection. For these reasons we conclude Anderson "has not overcome the presumption that counsel's failure to object was sound trial strategy" and the ineffective assistance claim fails. (*People v. Bell* (2020) 48 Cal.App.5th 1, 23.)

## II. Unauthorized Vehicle Code Fine

The trial court imposed a $390 fine for the Count 1 DUI conviction. Vehicle Code section 23566, subdivision (a), requires a minimum $1,015 fine if, as here, "the offense occurred within 10 years of two or more separate" DUI "violations …." Imposing the $390 fine was error.[7]

An unauthorized sentence is subject to correction at any time. (*People v. Rivera* (2019) 7 Cal.5th 306, 349.) We will reverse the judgment on this basis.

On remand, Anderson may challenge any other financial obligations imposed as part of the sentence. The court must hold an ability to pay hearing with respect to any nonpunitive fines. (*People v. Kopp* (2019) 38 Cal.App.5th 47, 95 ["due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes" a nonpunitive fine].) Any challenge to a punitive fine should be addressed "under the excessive fines clause of the Eighth Amendment of the federal constitution and article I, section 17 of the California Constitution." (*Id*. at pp. 96-97 ["there is no due process requirement that the court hold an ability to pay hearing before imposing a punitive fine"].) Anderson bears the burden to demonstrate an inability to pay. (*Ibid*.)

---

[7] A $390 fine is the standard fine for a DUI causing injury conviction *without* any prior DUI convictions. (§ 23560.)

## **DISPOSITION**

The conviction of Anderson is affirmed. The judgment is reversed and the trial court is directed to sentence Anderson consistent with this opinion.

SNAUFFER, J.

WE CONCUR:


FRANSON, Acting P.J.


SMITH, J.